IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MENICHINO, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 2:12-cv-00058 |
| v. | Judge Mark R. Hornak |
| CITIBANK, N.A., et al., | |
| Defendants. | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This is a putative class action for mortgage services fraud pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. Plaintiff Linda Menichino, on behalf of herself and others similarly situated, alleges that Defendants Citibank, N.A. ("Citibank"), CitiMortgage, Inc. ("CitiMortage"), ABN AMRO Mortgage Group ("ABN") (the mortgagees), Citibank Mortgage RE, AAMBG RE (the captive reinsurers), and Radian Guaranty Inc. ("Radian"), Genworth Mortgage Insurance Corporation ("Genworth"), and Mortgage Guaranty Insurance Corporation ("MGIC") (the primary mortgage insurers, or PMIs) engaged in an unlawful fee-splitting and kickback arrangement in connection with the Plaintiffs' residential mortgages. The Plaintiffs also bring a state-law unjust enrichment claim pursuant to 28 U.S.C. § 1367. They request treble damages, attorneys' fees, and costs. The Defendants have filed Motions to Dismiss in accordance with Federal Rule of Civil Procedure 12(b)(6), arguing that the Plaintiffs' claims are untimely because they were brought outside of RESPA's one-year statute of limitations. *See* 12 U.S.C. § 2614.

Because the Plaintiffs have pled facts sufficient to support tolling of the statute of limitations, the Defendants' Motions to Dismiss (ECF Nos. 133, 135) will be denied.[1]

## I. BACKGROUND

The facts set forth below are derived from the Plaintiffs' Second Amended Complaint ("Complaint"), ECF No. 126. Each of the twelve named Plaintiffs obtained residential mortgages from either Citibank or ABN AMRO between 2005 and 2008. They live in six states: Pennsylvania, North Carolina, Georgia, Maryland, New York, and Illinois. Because the Plaintiffs made down payments of less than 20 percent of the market value of their homes, the mortgagees required them to purchase primary mortgage insurance from Radian, Genworth, or MGIC. Primary mortgage insurance protects the mortgagee in the event that the borrower defaults on the loan. In turn, to hedge their own exposure in the event of a borrower default, the PMIs purchased reinsurance from each mortgagee's "captive" reinsurance subsidiary, Citibank Mortgage RE or AAMBG RE. Disclosures contained in the Plaintiffs' closing documents advised the Plaintiffs that their PMI was likely to purchase reinsurance from their mortgagee's respective captive reinsurer. The premiums for primary mortgage insurance and reinsurance were paid for with a portion of the total monthly mortgage premium remitted by the Plaintiffs.

In this lawsuit, the Plaintiffs allege that the portions of their monthly mortgage premiums that supposedly went to pay for reinsurance services were actually disguised kickbacks remitted

---

[1] The parties have provided Notices of Supplemental Authority, ECF Nos. 140 and 145, identifying *Cunningham v. M&T Bank Corp.*, 2013 WL 5876337 (M.D. Pa. Oct. 30, 2013), and *Riddle v. Bank of Am. Corp.*, 2013 WL 6061363 (E.D. Pa. Nov. 18, 2013), as noteworthy decisions for the Court to consider as to the Motions to Dismiss. *Cunningham* reinforces the Court's conclusion that Plaintiffs have adequately pled lack of inquiry notice and the reasonableness of their lack of due diligence. 2013 WL 5876337, at *6. The Court finds *Riddle* unhelpful to its current inquiry, as that opinion involved a summary judgment analysis under Fed. R. Civ. P. 56, whereas the Motions presently before the Court are brought pursuant to Fed. R. Civ. P. 12(b)(6), which requires a substantially different and less searching legal analysis.

by the PMI to the mortgagee in exchange for the mortgagee's continued flow of primary mortgage insurance business. The Plaintiffs contend that arrangement violates RESPA's prohibition on kickbacks and unearned fees. *See* 12 U.S.C. § 2607. Although the Plaintiffs concede that their claims fall outside of RESPA's one-year statute of limitations, they allege that they were prevented from learning about the existence of their claims because the Defendants fraudulently concealed the true purpose of the arrangement and gave them no reason to suspect that anything was amiss.

This action was filed on January 13, 2012; the Plaintiffs subsequently filed a First Amended Complaint (ECF No. 64) on December 4, 2012. Pursuant to Fed. R. Civ. P. 12(b)(6), the Defendants moved to dismiss the First Amended Complaint on February 4, 2013, which the Court granted without prejudice on July 19, 2013 on the grounds that the Plaintiffs had not set forth facts sufficient to plead an entitlement to equitable tolling. *See* Opinion, ECF No. 124; *Menichino v. Citibank, N.A.*, 2013 WL 3802451 (W.D. Pa. Jul. 19, 2013). Consistent with the Court's Order (ECF No. 125), the Plaintiffs timely filed their Second Amended Complaint on August 16, 2013, which the Defendants moved to dismiss on September 17, 2013.

## II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) empowers a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible if it alleges sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that "discovery will reveal evidence of the necessary

3

element[s]" of the claim. *Id.*; *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). Legal conclusions couched as factual allegations, conclusory factual allegations, and threadbare recitations of a cause of action are insufficient to state a facially plausible claim. *Iqbal*, 556 U.S. at 678-79. Moreover, a complaint fails to state a claim upon which relief can be granted if it seeks to bring an action beyond the applicable statute of limitations period and the plaintiff cannot demonstrate that the limitations period should otherwise be tolled. *Yang v. Odom*, 392 F.3d 97, 101 (3d Cir. 2004); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## III. DISCUSSION

Because the Plaintiffs have cured the factual defects in their First Amended Complaint by explaining how and when they learned about the possibility of their claims, what they did in response, and why they could not have pursued their claims within RESPA's one-year statute of limitations, they have pled an entitlement to equitable tolling that is plausible on its face. Accordingly, the Defendants' Motions to Dismiss will be denied.

### A. RESPA Claim

#### 1. Equitable Tolling

RESPA prohibits the remittance of kickbacks and unearned fees in connection with the provision of real estate settlement services. 12 U.S.C. § 2607(a)-(b). The statute of limitations for bringing a claim under section 2607 is one year from the date of the real estate closing. Section 2614; *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 358-60 (5th Cir. 2003); *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 305-06 (E.D. Pa. 2008); *see also Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 560 (M.D. Pa. 2010) (holding that the one-year statute limitations period in the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the sister statute to RESPA, accrues on the date of the real estate closing).

However, RESPA's statute of limitations may be equitably tolled if the plaintiff can set forth facts sufficient to show that (1) the defendant engaged in fraudulent concealment by actively misleading the plaintiff, (2) which prevented the plaintiff from recognizing the validity of his or her claim within the limitations period, and (3) that the plaintiff's ignorance is not attributable to his or her lack of reasonable due diligence in attempting to uncover the relevant facts.[2] *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 508-09 (3d Cir. 2006); *Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000). Regardless of the defendant's actions, equitable tolling will be inapplicable if the plaintiff was on inquiry notice of the possible existence of the claim during the limitations period yet failed to investigate the possible existence of the claim. *Cetel*, 460 F.3d at 507. A plaintiff is on inquiry notice whenever circumstances exist that would lead a reasonable person, through the exercise of due diligence, to discover his or her injury. *Id.*; *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 n.3 (7th Cir. 1995); *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985). At the pleading stage, the plaintiff bears the burden of establishing an entitlement to tolling that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *In re Comm. Bank of N. Va.*, 622 F.3d 275, 301 (3d Cir. 2010) ("Comm. Bank II") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391-92 (3d Cir. 1994)).

In its previous Opinion in this matter, this Court held that Plaintiffs had adequately pled active misleading but failed to plausibly show that they were not on inquiry notice or that their alleged due diligence was reasonable. Opinion, ECF No. 124 at 17-18; 2013 WL 3802451, at *9 (Plaintiffs' mortgage agreements stating that the reinsurers would transfer real risk in exchange

---

[2] Fraudulent concealment is an equitable doctrine that is read into every federal statute of limitations. *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 256 (3d Cir. 2001) (quoting *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d. Cir. 1993)).

5

for premium and that the reinsurance arrangement would result in no extra cost to the borrowers, in combination with the allegations regarding the "pay to play" scheme, was sufficient to plead active misleading and fraudulent concealment). Consequently, the Court granted the Plaintiffs leave to re-plead these two elements in a Second Amended Complaint. The Plaintiffs made no changes to the facts pled with respect to active misleading. Thus, that ruling need not be revisited. *See Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) ("The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the litigation." (quoting *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)).

Unlike the First Amended Complaint, the Second Amended Complaint sets forth, for each named Plaintiff, the following: the date that each Plaintiff received a notice of investigation from counsel; the date that each Plaintiff consented to counsel's representation; the dates each Plaintiff contacted their mortgagee and PMI to learn whether their mortgage had been reinsured; and what the Plaintiffs were told (or, more to the point, what they were not told) by their mortgagee and PMI's representatives in response to the notice. ECF No. 126 at ¶¶ 138-84. The Second Amended Complaint also alleges that none of the disclosures, correspondence, or monthly billing statements that Plaintiffs received from either their mortgagee or PMI after closing advised them that a portion of their monthly mortgage payments were financing reinsurance premiums or indicated that the mortgages were ever actually reinsured, which the mortgagee's own customer service representatives could not confirm when the Plaintiffs contacted them in response to receiving the notice from counsel. *Id.*

Even though the closing documents made Plaintiffs aware of the likelihood that their mortgages were going to be reinsured by their mortgagee's captive reinsurer, Plaintiffs have nevertheless alleged that the Defendants' post-closing disclosures and correspondence never

referenced the captive reinsurance arrangement or indicated that their monthly payments were financing the reinsurance premiums. These allegations are entitled to a presumption of truth for purposes of this Motion, as is the allegation that Plaintiffs participated actively in the loan process by reading their closing documents and subsequent monthly statements and disclosures. ECF No. 126 at ¶ 134. Viewed in the light most favorable to the Plaintiffs, these allegations are sufficient to plead that the Plaintiffs were not on inquiry notice of the possible existence of their claims and that their lack of due diligence during the limitations period was reasonable under the circumstances. *Comm. Bank II*, 622 F.3d at 305-307 (holding that similar allegations were sufficient to plead an entitlement to equitable tolling); *In re Comm. Bank of N. Va. Mort. Lending Prac. Litig.*, 2013 WL 3279551, at *19 (W.D. Pa. June 27, 2013). However, the Court's ruling on this issue shall not prejudice Defendants from re-raising the affirmative defense of the statute of limitations on a more fully developed record at summary judgment. *See Riddle v. Bank of Am. Corp.*, 2013 WL 1482668, at *10 (E.D. Pa. Apr. 11, 2013) (citing *Wise v. Mortg. Lenders Network, USA, Inc.*, 420 F. sup. 2d 389, 394-95 (E.D. Pa. 2006); *Brock v. Thomas*, 782 F. Supp. 2d 133, 140 (E.D. Pa. 2011)).

### 2. Violation of § 2607

Proceeding to the substantive allegations, the Court finds that Plaintiffs have pled a violation of RESPA that is plausible on its face. RESPA provides that "[n]o person shall give and no person shall receive any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service . . . shall be referred to by any person," and that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service...other than for services actually performed." 12 U.S.C.

7

§ 2607(a)-(c); *see also* § 2607(d) (providing for a private cause of action). In alleging the mortgage fraud scheme, Plaintiffs must state with particularity the circumstances constituting the fraud, although scienter may be alleged generally. Fed. R. Civ. P. 9(b).

Here, Plaintiffs have alleged that, in exchange for a steady stream of primary mortgage insurance business from Citibank and ABN, the PMIs remitted kickbacks, dressed up as "reinsurance premiums," to Citibank and ABN through their reinsurance subsidiaries. The source of the purported kickback funds was a portion of the monthly mortgage premium that the plaintiffs remitted to their mortgagees. In support of their allegation that no real risk was transferred between the PMIs and captive reinsurers, the Plaintiffs refer to the terms of the reinsurance contracts, which they contend provided no recourse to the PMIs in the event that the reinsurers did not maintain adequate funds in reserve to pay claims, as well as to the purportedly low dollar value of claims paid by the reinsurers versus the amount of reinsurance premium remitted by the PMIs between 2004 and 2011. (ECF No. 126 at ¶¶ 9-10, 84-87, 110-11.) The Complaint supports these allegations with details from the Defendants' public filings. At this stage of the litigation, these factual allegations are sufficient to plead a violation of RESPA's prohibition on kickbacks and unearned fees.

### B. <u>Unjust Enrichment Claim</u>

Plaintiffs' supplemental unjust enrichment claim also survives Rule 12(b)(6) review. While Defendants argue that Plaintiffs cannot as a matter of law pursue an unjust enrichment claim because a contract – namely, the mortgage document and accompanying disclosures – is directly on point, the Plaintiffs contend that the kickback arrangement is not contemplated anywhere within the four corners of that agreement. A cause of action for unjust enrichment lies only when the transaction underlying the dispute is not subject to a contract. The laws of the six

8

states in which the named Plaintiffs reside are in agreement on this point. *See Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007); *see also Georgia Dept. of Comm. Health v. Data Inquiry, LLC*, 722 S.E.2d 403, 407 (Ga. Ct. App. 2012); *Perez v. Citicorp Mortg. Inc.*, 703 N.E.2d 518, 526 (Ill. App. Ct. 1998); *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000); *Waters Edge Builder, LLC v. Longa*, 715 S.E.2d 193, 196 (N.C. Ct. App. 2011); *Clarke-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

Plaintiffs are correct that the only Defendants with whom Plaintiffs were in privity of contract were Citibank and ABM, the mortgagees. Even though the mortgage agreements stated that the mortgagees would use a portion of Plaintiffs' monthly mortgage payments to purchase primary mortgage insurance, Plaintiffs were not parties to the primary mortgage insurance contracts, nor were they entitled to any rights under those contracts. Similarly, Plaintiffs had no involvement with, were entitled to no rights in, and received no benefits under, the disputed reinsurance arrangements between the PMIs and captive reinsurers. Unlike cases where unjust enrichment claims were found not to lie because the terms of the contract between the parties governed their dispute, *see Northeast Fence*, 933 A.3d at 669; *Data Inquiry*, 722 S.E.2d at 407; *Perez*, 703 N.E.2d at 526; *Dashiell & Sons*, 747 A.2d at 610; *Longa*, 715 S.E.2d at 196; and *Clarke-Fitzpatrick*, 516 N.E.2d at 193, the Plaintiffs here were contracting parties only to the agreement that formed the first link in the chain. They had no involvement in or rights or obligations under the subsequent contracts that give rise to the crux of the dispute. Thus, Plaintiffs have sufficiently pled that there was no contract between themselves and the parties to the purported kickback scheme (the respective mortgagees, captive reinsurers, and PMIs

connected to their residential mortgages) that is on point or otherwise governs the disputed transaction.

Although a more detailed review of the variations in state law may be required at the class certification stage, *see Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301-03 (3d Cir. 2011), Plaintiffs have met their pleading burden as it exists at this point. Accordingly, the state-law claim survives.

## IV. **CONCLUSION**

For the reasons set forth above, the Defendants' Motions to Dismiss (ECF Nos. 133, 135) will be denied. An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: February ___, 2014

cc: All Counsel of Record