IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LINDA MENICHINO, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | 2:12-cv-00058 |
| v. | ) | Judge Mark R. Hornak |
| CITIBANK, N.A., et al., | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This case alleging unlawful practices related to mortgage insurance is back front and center on the Court's docket after the named Plaintiffs, individually and on behalf of a putative class of mortgagors, filed the instant Motion seeking to lift the now two-year long stay that they requested and asking for leave to file a Third Amended Complaint. ECF No. 204.

Plaintiffs allege that Defendants Citibank, N.A. and Citimortgage, Inc., mortgagees, along with ABN AMRO Mortgage Group, Inc., a reinsurer, set up a captive reinsurance scheme in which Defendants charged Plaintiffs monthly insurance premiums for private mortgage insurance and selected for Plaintiffs private mortgage insurers who illegally paid kickbacks to Defendants for non-existent reinsurance services. Plaintiffs' proposed Third Amended Complaint comes in four counts: violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I), conspiracy to violate RICO (Count II), violations of the Real Estate Settlement Procedures Act (RESPA) (Count III), and unjust enrichment (Count IV). ECF No. 205-1 at 68-82.

Defendants say Plaintiffs' proposed RESPA and RICO claims are time-barred. They urge the Court to deny Plaintiffs leave to file a Third Amended Complaint and allow the case to proceed. But if the Court grants leave to amend, Defendants want the Court to leave the stay in place pending final disposition of another, similar case brought by Plaintiffs' lawyers on behalf of other plaintiffs.[1]

For the reasons that follow, Plaintiffs' Motion for Leave to Amend will be denied. The Court will set a status conference regarding the status of the current stay.

## I. LEGAL STANDARD

Once a party has exhausted its opportunities to amend a pleading as a matter of course, it may amend a pleading "only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although "the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint," such decision is left to the "sound discretion of the district court." *CMR D.N. Corp. v. City of Philadelphia,* 703 F.3d 612, 629 (3d Cir. 2013). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## II. ANALYSIS

### A. Plaintiffs' Proposed Amendment to The RESPA Claim is Futile

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 115 (citations omitted). Amendment of the complaint is futile where the claim as amended would not survive a motion to dismiss

---

[1] That case is *Weiss v. Bank of America Corp.*, No. 15-cv-62, 2016 WL 6879566 (W.D. Pa. Nov. 22, 2016), *on appeal*, *Weiss v. Bank of America Corp.*, No. 16-4386 (3d Cir.).

2

because it is time-barred. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). In the context of a statute-of-limitations argument, dismissal is proper "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *see also Robinson v. Johnson*, 313 F.3d 128, 135-36 (3d Cir. 2002). A facially-untimely pleading thus can be dismissed as time-barred if, for example, plaintiffs fail to "plead the applicability of the [tolling] doctrine" or if "it is plain on the face of the complaint that the limitations period cannot be tolled." *Menichino v. Citibank, N.A.*, No. 12-cv-58, 2013 WL 3802451, at *6-7 (W.D. Pa. July 19, 2013) (collecting Third Circuit cases).

Plaintiffs first seek leave to amend their RESPA claim. Each of the named Plaintiffs obtained their loans between 2005 and 2007, but they did not file their RESPA claim in this case until January 13, 2012. ECF No. 1; ECF No. 205-1 at 11-14. Defendants therefore say that Plaintiffs' proposed amendment to the RESPA claim is futile because it is facially untimely under RESPA's one-year statute of limitations.[2] ECF No. 214 at 12-14.

Plaintiffs agree that RESPA's one-year limitations period applies, and they have previously acknowledged that unless such limitations period is tolled, the named Plaintiffs' claims fall outside of it.[3] But Plaintiffs say that their proposed amendment to the RESPA claim is an attempt to remedy the statute-of-limitations issue by limiting the alleged RESPA violations

---

[2] RESPA's statute of limitations provides that "[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction . . . within . . . 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation." 12 U.S.C. § 2614 (emphasis added).

[3] *See, e.g.*, ECF No. 64 at 42 ¶ 117 ("For Plaintiffs and other members of the Classes whose claims accrued prior to one year preceding the commencement of this action, equitable tolling is available under RESPA and should apply."); ECF No. 111 at 21 ("Although claims arising under Section 8 of RESPA are subject to a one-year statute of limitations . . . principles of equitable tolling prevented the one-year statute of limitations applicable to Plaintiffs' RESPA claims from expiring before Plaintiffs commenced this litigation.").

3

for which they seek relief to those that occurred within one year of the filing of this lawsuit. *See* ECF No. 205 at 4; ECF No. 205-1 at 47 ¶ 163(b).

Here is the context for Plaintiffs' request. The Court dismissed the RESPA claim in Plaintiffs' First Amended Complaint because it was facially untimely under RESPA's limitations period and Plaintiffs had not pled enough facts to save their claims under any recognized tolling doctrine. ECF No. 124 at 2. Specifically, the Court concluded that there were insufficient facts to determine what led Plaintiffs to discover their RESPA claims, when such discovery occurred, and whether Plaintiffs exercised due diligence to attempt to discover such claims. *Id.* at 18-21.

The Court also rejected Plaintiffs' "continuing violations" theory. Under that theory, each remittance of a monthly mortgage payment constituted a continuing violation of RESPA that reset the accrual date for their RESPA claim.[4] *Id.* at 22. In rejecting Plaintiffs' "continuing violations" theory, the Court explained that:

> RESPA's statute of limitations speaks only of "a single triggering violation, not multiple violations." Snow, 332 F.3d at 359 (citing section 2614). Similarly, in "creating the private right of action for kickbacks and fee-splitting" in section 2607, "Congress also spoke of a single 'violation,'" thus implying that the statutory regime envisions a kickback scheme with ongoing payments as comprising a "single integrated transaction." *Id.* In this sense, the closing of the mortgage and continuous premium payments are more properly conceived of as "a single violation followed by continuing consequences," where the closing of the mortgage is the single actionable violation and the recurring payments towards the mortgage balance are the continuing ill effects. Id. (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)); see also In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984) (in action involving TILA's one-year statute of limitations, "[n]ondisclosure is not a continuing violation for purposes of the statute of limitations.").

*Id.* at 23.

---

[4] As to Plaintiffs' previous "continuing violations" theory, the Court's July 19, 2013 decision is the law of the case. ECF No. 124. But because Plaintiffs' new theory is at least arguably distinct, the Court believes that it is appropriate to address it on its own merits.

4

Plaintiffs then filed a Second Amended Complaint, which added some meat to the bones. ECF No. 126. They pled facts making it plausible that Defendants' fraudulent concealment of information prevented them from bringing their claim earlier, that they were not on inquiry notice of the possible existence of their RESPA claims, and that their lack of due diligence during the limitations period was reasonable under the circumstances. Specifically, Plaintiffs set forth some of the language of the loan documentation, the date that each Plaintiff received a notice of investigation from counsel, the date that each Plaintiff consented to counsel's representation, the dates that each Plaintiff contacted their mortgagee and private mortgage insurer to learn whether their mortgage had been reinsured, and what Plaintiffs were told (or, in some cases, not told) by their mortgagee and private mortgage insurers' representatives in response. ECF No. 126 at ¶¶ 126-27, 138-84. Taken together, the facts alleged were sufficient to show that Plaintiffs might be entitled to equitable tolling of RESPA's one-year statute of limitations. In light of this more-detailed pleading, the Court concluded that Plaintiffs' RESPA claim cleared the motion-to-dismiss hurdle.[5] ECF No. 149 at 2, 6-7.

But then came our Court of Appeals' precedential opinion in *Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016), a nearly identical case brought by these Plaintiffs' lawyers on behalf of other plaintiffs. As they did in this case, Plaintiffs' lawyers argued in *Cunningham* that the plaintiffs there were entitled to equitable tolling of RESPA's statute of limitations due to the defendants' fraudulent concealment of information. *Id.* at 160-61. The Third Circuit—with the benefit of seeing the evidence that adduced through discovery on the issue of equitable tolling—disagreed. *See id.* at 161-64. It concluded that where mortgagors received a disclosure

---

[5] As to this statute-of-limitations issue, the Court would ordinarily consider its February 5, 2014 decision to be the law of the case. ECF No. 149 at 1-2. But Plaintiffs have now expressly disavowed their equitable tolling argument, which formed the basis of that decision. *See* ECF No. 205 at 5, 12.

5

explaining affiliate reinsurance in plain language, signed and dated the disclosure, decided not to opt out of reinsurance with an affiliate of the mortgagees, initialed a document disclosing the possibility of captive reinsurance, and took no steps after the closing of their loans to investigate whether such captive reinsurance programs violations of state or federal law, they were not entitled to equitable tolling of RESPA's statute of limitations. *Id.* This is so because "[a]t the closing, Plaintiffs were made aware that the mortgage insurance on their home might be reinsured with an affiliate of [the mortgagor] and, at that moment, they had all the facts necessary to develop their claims under RESPA. Yet they failed to take any steps to investigate during the approximately four-year period between the time of the closing and the time that they were approached by counsel. This inaction was not reasonable diligence." *Id.* at 162.

Plaintiffs appear to have sensed a sea change post-*Cunningham* because they want to adjust their sails. Despite the Court's earlier conclusion that Plaintiffs had alleged facts sufficient to show their possible entitlement to equitable tolling, Plaintiffs now—in seeking to file a Third Amended Complaint—completely disavow their reliance on equitable tolling. ECF No. 205 at 5, 12. Perhaps Plaintiffs' lawyers, having just litigated *Cunningham*, believe that if discovery proceeds on the equitable tolling issue, substantially similar evidence will appear here, refuting their argument that RESPA's statute of limitations should be tolled due to fraudulent concealment. Whatever the reason, Plaintiffs now argue that their RESPA claim is timely under an entirely different theory. *See* ECF No. 217 at 5-6.

Plaintiffs' new theory goes like this. Instead of each monthly mortgage insurance payment constituting a continuing violation of RESPA, they now contend that each monthly mortgage insurance payment constitutes a new, independent violation of RESPA. *Id.* Thus, according to Plaintiffs, they can maintain a RESPA action with respect to those mortgage

6

insurance payments made within one year of the date of the filing of their original Complaint, ECF No. 205-1 at 182, because each of those payments constitutes a new violation of RESPA with its own one-year statute of limitations. ECF No. 217 at 5-6.

The Court concludes that Third Circuit precedent precludes the application of Plaintiffs' theory. The Third Circuit in *Cunningham* recently reaffirmed that RESPA's statute of limitations "runs from the date of the occurrence of the violation . . . which begins at the closing of the loan." *Cunningham*, 814 F.3d at 160 (citing with approval *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 281, 303 (3d Cir. 2010) ("RESPA's one-year statute of limitations . . . begins to run 'from the date of the occurrence of the violation,' *i.e.*, the date the loan closed. . . . As noted, a claim for damages . . . under RESPA . . . is subject to a one-year limitations period that begins to run from the date the loan closed.") (citations omitted)).

In the face of claims very similar to those here, the *Cunningham* court concluded that plaintiffs who closed their loans in 2007 and 2008 and filed suit alleging violations of RESPA in 2012 brought their suit "several years after the statute of limitations had expired." 814 F.3d at 160-61. Rather than looking to the dates of the plaintiffs' mortgage insurance premium payments for the purposes calculating RESPA's statute of limitations, the *Cunningham* court looked to the dates of the plaintiffs' loan closings. *See id.* It then turned to the doctrine of equitable tolling to determine whether the plaintiffs' claims were timely despite being raised after the expiration RESPA's one-year statute of limitations. *See id.*

Plaintiffs here cannot avoid the logic of *Cunningham* by rebranding, after five years, a reinsurance scheme they believe violates RESPA as a series of new, independent violations that occurred when they made their private mortgage insurance payments each and every month—particularly where, as they allege in their proposed Third Amended Complaint, (1) they

7

prospectively agreed on the date of the loan closing to pay for private mortgage insurance over the life of the loan, (2) the loan documentation itself contained language informing them that such mortgage insurance may be part of a captive reinsurance arrangement, (3) the loan documentation explained how such captive reinsurance arrangement was supposed to work, and (4) the amount of their mortgage insurance premium and/or the captive reinsurer to be paid was set on the date of loan closing. *See* ECF No. 205-1 at 11-14, 43-44, 54. If Defendants' captive reinsurance scheme violated RESPA as Plaintiffs claim, the gravamen of that violation occurred when Plaintiffs closed their loans, *see Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003), and the Plaintiffs' subsequent monthly payments were the continuing consequences of that violation. *See, e.g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

In sum, although the Third Circuit's decision in *Cunningham* dealt primarily with the application of equitable tolling, Plaintiffs' new theory does not run counter to applying the core reasoning underlying that decision in this case. Accepting the allegations in their proposed Third Amended Complaint as true, the Plaintiffs were "made aware that the mortgage insurance on their home might be reinsured with an affiliate of [Defendants] and, at that moment, they had all the facts necessary to develop their claims under RESPA. Yet they failed to take any steps to investigate during the approximately four-year period between the time of the closing and the time that they were approached by counsel."[6,7] *Cunningham*, 814 F.3d at 162; *see also* ECF No. 205-1 at 11-14, 43-44, 54, 56-66; ECF No. 205 at 5, 12.

---

[6] More specifically in this case, Plaintiffs have disavowed their reliance on any doctrine of equitable tolling under which such investigative steps might have relevance. ECF No. 205 at 5, 12.

[7] Plaintiffs' new theory also does not run counter to applying the core reasoning underlying this Court's earlier Opinion rejecting the application of the continuing violations doctrine. *See* ECF No. 124 at 23 ("RESPA's statute of limitations speaks only of a single triggering violation, not multiple violations. Similarly, in creating the private right of action for kickbacks and fee-splitting in section 2607, Congress also spoke of a single violation, thus implying

8

In a last effort to save their RESPA claim, Plaintiffs argue that *Cunningham* and *In re Cmty. Bank of N. Virginia* are inapposite because Plaintiffs' new theory has been endorsed by Richard Cordray, the Director of the Consumer Financial Protection Bureau (CFPB). To support their position, Plaintiffs rely upon a 2015 CFPB administrative decision signed by Director Cordray involving captive reinsurance arrangements, *In re PHH Corp., et al.*, No. 2014-CFPB-0002 (docketed at ECF No. 205-12). In that administrative decision, Director Cordray distinguished between a theory of liability based upon continuing violations of RESPA and a theory of liability for new violations of RESPA with each payment. ECF No. 205-12 at 23, 27-28.

With respect to what Plaintiffs previously called their "continuing violations" theory, Director Cordray stated that that theory should not allow plaintiffs to use each new mortgage payment in a captive reinsurance arrangement to bring within the statute of limitations every earlier payment since the signing of the mortgage. *Id.* at 27-28. In so concluding, Director Cordray directly cited to this Court's earlier decision in this case: "[T]he plain language of RESPA does not envision . . . a cumulated series of events as giving rise to a cause of action." *Id.* at 28.

With respect to the theory on which Plaintiffs now attempt to rely, Director Cordray concluded that a mortgagee "violate[s] RESPA every time it accept[s] a reinsurance payment" under a captive reinsurance scheme. *Id.* at 23-27. Director Cordray reasoned that a new violation of RESPA occurs, and thus a new statute of limitations runs, whenever plaintiff makes a

---

that the statutory regime envisions a kickback scheme with ongoing payments as comprising a single integrated transaction. In this sense, the closing of the mortgage and continuous premium payments are more properly conceived of as a single violation followed by continuing consequences, where the closing of the mortgage is the single actionable violation and the recurring payments towards the mortgage balance are the continuing ill effects.") (citations and quotations omitted). The Third Circuit has clarified that "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation," and in any case, it "is not a substitute for a plaintiff's awareness of and duty to assert his/her rights in a timely fashion." *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 85 (3d Cir. 2014).

9

payment subject to a captive reinsurance scheme. *Id.* In other words, the statute of limitations begins to run at closing if a plaintiff pays for the entirety of a service at the closing, but in a captive reinsurance case, a new statute of limitations for each payment begins to run at the time of each payment—typically each month—because each payment constitutes a new violation of RESPA. *Id.* at 23-27.

Given that Director Cordray's interpretation of RESPA's statute of limitations in *In re PHH* appears to be at odds with settled Circuit precedent as expressed in *Cunningham* and *In re Cmty. Bank of N. Virginia*, one question is what weight or deference, if any, should the Court give Director Cordray's interpretation?

The Supreme Court has suggested that an agency's statutory interpretation made within the context of a formal adjudication is entitled to *Chevron*[8] deference, making it "binding in the courts unless procedurally defective, arbitrary or capricious in substance . . . manifestly contrary to the statute," unconstitutional, or outside the bounds of its jurisdiction.[9] *U.S. v. Mead Corp.*, 533 U.S. 218, 227-31 n.6 (2001). Even if it were not entitled to *Chevron* deference, Director Cordray's statutory interpretation might be entitled to *Skidmore*[10] deference, making it persuasive authority the weight of which is typically determined by looking to the agency's care, consistency, formality, and relative expertness in administering its own statute. *Id.* at 228.

---

[8] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)

[9] *See also Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (suggesting, but not deciding, that formal adjudications are entitled to *Chevron* deference); 33 Fed. Prac. & Proc. Judicial Review § 8341 (1st ed.) ("Two recent Supreme Court opinions, *Mead* and *Christensen*, . . . suggest that statutory interpretation undertaken in the course of formal adjudication must be given the stiffer *Chevron* deference.").

[10] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)

Not so here. The Third Circuit's decision in *Cunningham* post-dates Director Cordray's statutory interpretation in *In re PHH Corp.* by eight months.[11] Although the Third Circuit did not reference *In re PHH Corp.* in its *Cunningham* opinion, this Court will not stray from that Circuit precedent based on an assumption that the Third Circuit (or counsel, particularly Plaintiffs' counsel) overlooked Director Cordray's interpretation of RESPA's statute of limitations. Such an assumption is unwarranted given the eight-month interval between the relevant decisions and the fact that counsel for the plaintiffs in *Cunningham*—the very same attorneys who represent Plaintiffs in this case—cited to Director Cordray's *In re PHH* decision in their briefing to the panel in that case, *see* No. 15-1412, Appellants Br. at 7, 20 (3d Cir. July 23, 2015), and cited to the *In re PHH* decision again in their Petition for Rehearing or Rehearing *En Banc*, which was denied by a majority of the active judges of the Third Circuit. *See id.*, Appellants Pet. for Reh'g at 19 n. 7 (March 18, 2016); Order Den. Pet. Reh'g (April 1, 2016).

To be sure, the Third Circuit did not explicitly resolve the question of whether Director Cordray's statutory interpretation is entitled to controlling, or even persuasive, weight. But in the face of and well after Director Cordray's decision *In re PHH*, our Court of Appeals reaffirmed that RESPA's statute of limitations "runs from the date of the occurrence of the violation . . . which begins at the closing of the loan," and it reaffirmed as much without engaging in any discussion of when the *Cunningham* plaintiffs' most recent mortgage insurance premiums were paid. *See Cunningham*, 814 F.3d at 160-62 (citing with approval *In re Cmty. Bank of N. Virginia*, 622 F.3d at 281, 303) ("RESPA's one-year statute of limitations . . . begins to run 'from the date of the occurrence of the violation,' *i.e.*, the date the loan closed. . . . As noted, a claim for

---

[11] The *Cunningham* opinion was filed on February 19, 2016, and amended on February 26, 2016. 814 F.3d at 156. The *In re PHH* decision is dated June 4, 2015. ECF No. 205-12 at 39.

damages . . . under RESPA . . . is subject to a one-year limitations period that begins to run from the date the loan closed.") (citations omitted)).

In deciding that Plaintiffs' RESPA claim is time-barred (absent equitable tolling, which now appears to be out of this case), the Court notes that it reaches a different conclusion regarding the interpretation RESPA's statutory limitations period than did the court in *White v. PNC Fin. Servs. Grp., Inc.*, No. 11-cv-7928, 2017 WL 85378 (E.D. Pa. Jan. 10, 2017) and *Blake v. JPMorgan Chase Bank, N.A.*, No. 13-cv-6433, 2017 WL 1508995 (E.D. Pa. Apr. 26, 2017). The Court does not do so lightly. It nonetheless reads Third Circuit precedent in *Cunningham* and *In re Cmty. Bank of N. Virginia* differently, and concludes that at least on the facts alleged in this case, such a reading is in accord with the weight of federal authority concerning statutory limitations periods generally and RESPA's statute of limitations in particular.[12] Of note, no

---

[12] In doing so, this Court has canvassed a wide swath of decisional law bearing on this issue, and notwithstanding the analysis in *White* and *Blake*, it concludes that in the context of this case and as to this particular argument, *Cunningham*'s general conclusion is fully applicable and does not result in a decisional outlier in this case if it is applied according to its terms. *See, e.g., Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute."); *Clark v. Iowa City*, 87 U.S. 583, 589 (1874) ("All statutes of limitations begin to run when the right of action is complete."); *Clemmons v. Mortgage Electronic Registration Systems, Inc.*, No. 13-3204, 2014 WL 12013437, at *4 (10th Cir. 2014) (courts "generally interpret [RESPA's statute of limitations] to mean the date of the relevant closing."); *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1036 1040 (9th Cir. 2014) (letting stand the district court's conclusion that RESPA's statute of limitations begins to run from the date of the loan's closing and turning to the issue of equitable tolling); *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 955 (6th Cir. 2014) (concluding under the limitations period of an analogous statute, the Truth in Lending Act, which contains the same "date of the occurrence of the violation" language as RESPA, that such limitations period begins to run when a mortgagor enters into a loan agreement); *Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 479 (6th Cir. 2014) (same); *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008) (same); *Snow*, 332 F.3d at 359 ("The phrase 'the date of the occurrence of the violation' [from the statutory text of RESPA] refers to the closing . . . because that is when the agents earned the allegedly prohibited 'thing of value.' . . . Congress spoke of a single triggering violation, not multiple violations. . . . Had Congress wanted the various steps in a single transaction to trigger the statute of limitations multiple times, it would have spoken of multiple 'violations.' . . . [T]his use of the term "violation" refers to the single integrated transaction, regardless how many steps it has. . . . Congress directed RESPA toward the closing."); *MacNamara v. Hess*, 67 F. App'x 139, 143 (3d Cir. 2003) ("the proper focus for accrual purposes is on the time of the alleged unlawful acts, 'not upon the time at which the *consequences* of the acts became most painful.'") (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258, (1980)); *Perez v. Jpmorgan Chase Bank, N.A.*, No. 14-cv-2279, 2016 WL 816752, at *4 (D.N.J. Feb. 29, 2016) (Under RESPA, "[t]he 'date of the occurrence' refers to the date of the loan's closing."); *Vehec v. Asset Acceptance, LLC*, No. 15-cv-1035, 2016 WL 4995066, at *3 (W.D. Pa. Aug. 8, 2016) ("In order to pursue this 'continuing violations theory,' Plaintiffs must be able to demonstrate that each withdrawal was

12

Court of Appeals has held that each monthly mortgage insurance payment constitutes a new and independent violation of RESPA or that RESPA's statutory limitations period is otherwise tied to the date of the most recent monthly mortgage insurance payment(s), particularly in a case such as this one, where (1) a plaintiff prospectively agreed on the date of the loan closing to pay for private mortgage insurance over the life of the loan, (2) the loan documentation itself contained language informing the borrower that such mortgage insurance may be part of a captive reinsurance arrangement, (3) the loan documentation explained how such captive reinsurance

---

part of a 'persistent and ongoing pattern, not continuing consequences of an original violation.' The theory is most frequently applied in civil rights cases and employment suits involving allegations of discrimination and hostile work environment where repetition and continuity of conduct are part and parcel of the claim itself. Courts generally have been hesitant to expand it to other claims. This may be particularly true where the statute of limitations speaks only of 'a single triggering violation, not multiple violations.'") (citing *Menichino*, 2013 WL 3802451, at *6-7) (collecting cases); *Taylor v. Wells Fargo Bank, N.A.*, 85 F. Supp. 3d 63, 77 (D.D.C. 2015) ("Courts have held that the 'date of the occurrence' language in [RESPA] refers to the date of the closing.") (collecting cases); *Strong v. Countrywide Home Loans, Inc.*, No. 15-cv-1536, 2015 WL 7185464, at *2 (D. Or. Nov. 13, 2015) ("Like TILA, RESPA violations generally occur at the time of consummation of the transaction."); *Joseph v. Am.'s Wholesale Lenders*, No. 13-cv-2479, 2014 WL 12540445, at *5 (S.D. Tex. Oct. 17, 2014) ("The [RESPA] limitations period starts from the date of closing, regardless of how many violations took place thereafter."); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291, 2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014) ("RESPA's one-year statute of limitations[] runs from the date of the alleged violation—*i.e.*, the payment of the illicit referral or unearned fees at closing."); *Baker v. LNV Corp.*, No. 11-cv-14086, 2013 WL 3868078, at *5 (E.D. Mich. July 25, 2013) ("By the terms of [RESPA], the limitations period runs from the date of the 'occurrence,' not the date the violation is discovered, and the date of the occurrence is the date on which the loan documents are executed."); *Collier v. Ocwen Loan Servicing, LLC*, No. 12-cv-2937, 2013 WL 3715699, at *4 (N.D. Ohio July 15, 2013) ("A RESPA violation occurs when the loan closing takes place."); *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 25 (D.D.C. 2012) ("'a cause of action under § 2607 accrues on the date of the closing,' and the statute of limitations is one year."); *Alley v. Aurora Loan Servs. LLC*, No. 10-cv-02163, 2011 WL 3799035, at *14 (D. Colo. July 21, 2011) ("[T]he date of the occurrence of the violation refers to the closing."); *Melancon v. Countrywide Bank*, No. 10-cv-1723, 2011 WL 692051, at *6 (E.D. La. Feb. 18, 2011) (calculating RESPA statute of limitations from the date that "the fee was assessed and clearly disclosed" to the plaintiffs); *Palmer v. Homecomings Fin. LLC*, 677 F. Supp. 2d 233, 237 (D.D.C. 2010) ("A cause of action under § 2607 accrues on the date of the closing."); *Hennington v. Bank of Am.*, No. 10-cv-1350, 2010 WL 5860296, at *5 (N.D. Ga. Dec. 21, 2010) ("The violation occurs, and the one year begins to run, when the loan closing documents are executed."); *Dusich v. Seeley*, No. 10-cv-1239, 2010 WL 4384249, at *4 (M.D. Pa. Oct. 29, 2010) ("RESPA's statute of limitations . . . requires suits under RESPA to be asserted within one year of the date of the closing."); *Engel v. First Am. Title Ins. Co.*, No. 09-cv-5140, 2010 WL 3819372, at *3 (W.D. Wash. Sept. 30, 2010) ("'The date of the occurrence' [under RESPA] is interpreted to refer to the closing."); *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179, 2009 WL 10656726, at *4 (N.D. Cal. Oct. 28, 2009) ("Plaintiffs' claims under Sections 8 and 9 of RESPA relating to kickbacks, title insurance, and other allegedly wrongfully charged fees, are barred by the one-year statute of limitations because Plaintiffs filed suit nearly three years after closing on their loan."), *rev'd in part, vacated in part on other grounds*, 759 F.3d 1023 (9th Cir. 2014), and *aff'd in part, vacated in part on other grounds*, 583 F. App'x 662 (9th Cir. 2014); *Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) ("The Court agrees . . . that the [RESPA] statute of limitations in this case began to run on the date of the closing, December 6, 2006."); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 324-25 (M.D.N.C. 2002) (concluding that a violation of RESPA occurs at loan's closing, not with each subsequent monthly private mortgage insurance premium payment).

13

arrangement was supposed to work, and (4) the amount of their mortgage insurance premium and/or the captive reinsurer to be paid was set on the date of the loan closing. *See* ECF No. 205-1 at 11-14, 43-44, 54.

The Court will therefore deny Plaintiffs' request to amend their RESPA claim based on their new theory. Such an amendment would be futile even if the proposed RESPA claim related back to the time of the filing of the original pleading because it is time-barred and because Plaintiffs have now expressly disavowed their reliance on any equitable tolling doctrine.[13]

### B. Plaintiffs Unduly Delayed in Filing The Proposed RICO Claims

Plaintiffs also seek leave to amend to add two new RICO claims. A court may deny leave to amend when the party seeking amendment has engaged in undue delay, exercised bad faith, or used dilatory tactics, or when amendment would cause prejudice to the opposing party. *See Shane*, 213 F.3d at 115. "Delay alone will not constitute grounds for denial." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citations omitted). But "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Id.* The question of whether delay is undue focuses "on the movant's reasons for not amending sooner," *id.*, as well as considerations of judicial economy and finality. *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004).

The Court concludes that Plaintiffs have unduly delayed in bringing their RICO claims. Plaintiffs obtained their loans between 2005 and 2007, admit they were put on notice of the possibility of their claims in 2011 or 2012, *see* ECF No. 205-1 at 56-66, filed this lawsuit in January of 2012, and yet did not file their RICO claims or seek leave to file their RICO claims

---

[13] The Court need not address Defendants' argument that the rule of lenity has bearing on the interpretation or application of RESPA's statute of limitations.

14

until September of 2016. *See* ECF Nos. 1, 204-05; *see also White v. PNC Fin. Servs. Grp., Inc.*, No. 11-cv-7928, 2017 WL 85378, at *12-13 (E.D. Pa. Jan. 10, 2017) (denying plaintiffs leave to amend to add RICO claims because of their undue delay in a case nearly identical to this one in terms of its substance, timeline, and procedural posture); *Blake v. JPMorgan Chase Bank, N.A.*, No. 13-cv-6433, 2017 WL 1508995, at *10-11 (E.D. Pa. Apr. 26, 2017) (denying plaintiffs leave to amend to add RICO claims in another similar case after a three-year delay).

As in *White*, this case has been on the Court's docket for over five years. As in *White*, Plaintiffs have had three earlier chances to bring RICO claims: (1) the original Complaint in January of 2012, (2) the First Amended Complaint in December of 2012, and (3) the Second Amended Complaint in August of 2013. *See* ECF Nos. 1, 64, 126. And as in *White*, Plaintiffs have pointed to no recent change in law and/or no recently-discovered fact(s) that might explain their delay. 2017 WL 85378, at *12-13; *see also Blake*, 2017 WL 1508995, at *11 (Plaintiffs "have provided no reason explaining why they now assert brand new RICO claims more than four years after being contacted by counsel.").

Plaintiffs say the age of this case is not indicative of delay because the Court has granted three stays for a total of about forty months. Although the stays were lengthy, each stay was ordered at the request of Plaintiffs, *see* ECF Nos. 43, 165, 196, one of the stays was granted despite the fact that it was opposed, *see* ECF No. 169, the stays were not lifted until Plaintiffs either requested or consented to reopening the case, ECF Nos. 52, 178, Plaintiffs have actively litigated for a total of over two years in this case's five-plus year history, and this Court has already issued two lengthy opinions at the motion to dismiss stage. ECF Nos. 124, 149. Tellingly, Plaintiffs offer no explanation or justification for their delay in asserting the RICO claims or for not seeking to add them earlier, ECF Nos. 205, 217, beyond in essence implicitly

15

asserting that they really don't have to provide one. That is not the law in this Circuit. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (noting that the focus is on the movant's reasons for not amending sooner).

In sum, the Court has—until this point—given Plaintiffs wide latitude to litigate at their own pace. The Court will not, however, allow Plaintiffs to inject entirely new RICO claims into this now-five-year-old case, especially considering that Plaintiffs acknowledgement in their papers that they either did become aware or could have become aware of such claims when they engaged counsel five or more years ago. *See* ECF No. 205 at 7, 10; ECF No. 205-1 at 56-66.

The Court will therefore deny Plaintiffs' request to amend to add RICO claims.[14]

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Leave to Amend (ECF No. 204) is denied. A status conference will be set by further Order of the Court. Among other things, the parties shall be prepared to discuss (1) the status of Plaintiffs' RESPA claim as pled in their Second Amended Complaint; and (2) any cases pending before the Third Circuit that may have bearing on the resolution of issues remaining in this case; and (3) whether the current stay should remain in place.

Mark R. Hornak
United States District Judge

Dated: June 6, 2017

cc: All counsel of record

---

[14] The Court need not address Defendants' argument that the filed rate doctrine precludes Plaintiffs' RICO claims.