IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA MENICHINO ET AL,

    Plaintiffs,

v.

CITIBANK, N.A. ET AL,

    Defendants.

Civil Action No. 2:12-cv-58

Judge Mark R. Hornak

# OPINION

**Mark R. Hornak, United States District Judge**

This action alleging unlawful practices related to mortgage insurance practices is once again front and center on the Court's docket after the Defendants filed the instant Motion for Judgment on the Pleadings as to Plaintiffs' Second Amended Class Action Complaint, ECF No. 238 ("Motion"). Plaintiffs' Second Amended Class Action Complaint, ECF No. 126 ("SACAC") contains one count for violation of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607 ("RESPA"), and one count for common law unjust enrichment. For the following reasons, the Motion will be granted.

## I.   Background

Since the Court's last Opinion on February 5, 2014, ECF No. 149,[1] the following events have transpired.

First, the Court granted a motion to stay the case on March 26, 2014, ECF No. 175, pending the disposition by the United States Court of Appeals for the Third Circuit of the appeal

---

[1] *See Menichino v. Citibank, N.A.*, No. 12-cv-00058, 2014 WL 462622, at *1 (W.D. Pa. Feb. 5, 2014). For further discussion of the facts of the case, see this Court's earlier Opinion at *Menichino v. Citibank, N.A.*, No. 12-cv-0058, 2013 WL 3802451 (W.D. Pa. July 19, 2013).

1

in *Riddle v. Bank of America Corp.*, No. 13-4543 (3d Cir.). That case was decided by a non-precedential opinion filed on October 15, 2014, and reported at 288 F. App'x 127 (3d Cir. 2014).

Second, a case in the Middle District of Pennsylvania, which the parties agreed "involve[d] certain questions of law similar to those" in this case, also went up on appeal to our Court of Appeals. Stipulation and [Proposed] Order for Stay of all Proceeding, ECF No. 196, at 2. That district court opinion was reported at *Cunningham v. MT&T Bank Corp.*, No. 12-cv-1238, 2015 WL 539761 (M.D. Pa. Feb. 10, 2015). On review, our Court of Appeals affirmed the district court's grant of summary judgment on the RESPA claim. 814 F.3d 156 (3d Cir. 2016). The parties sought to stay this action in light of the mutual understanding that the Plaintiffs "allege the same causes of action (RESPA and unjust enrichment), and rely upon similar arguments in favor of equitably tolling those claims" as did the plaintiffs in *Cunningham*. ECF No. 196, at 2. The parties, together, asserted to this Court that "the ultimate resolution of the central issue in the *Cunningham* action, i.e., the applicability and application of the doctrine of equitable tolling, has a very reasonable likelihood of informing this Court on the resolution of such matters in this case, and advancing the ultimate disposition of this action." *Id.*

Indeed, the facts here parallel the factual record in *Cunningham*. In both cases, the plaintiffs obtained residential mortgage loans to finance the purchase of their homes. March 2014 Op., ECF No. 149, at 2; *Cunningham*, 814 F.3d at 159. Because the plaintiffs made mortgage down payments of less than twenty (20) percent of the market value of their mortgaged homes, the mortgagees (the lenders) required the plaintiffs (the borrowers) to purchase primary mortgage insurance ("PMI") from specific vendors.[2] ECF No. 149, at 2; *Cunningham*, 814 F.3d at 159.

---

[2] PMI protects the mortgagee in the event that the borrower defaults on his or her mortgage because the mortgagee is the beneficiary of the insurance policy.

PMI insurers may then contract for reinsurance from a reinsurance company.[3] The relevant mortgagees in these cases instituted their own captive companies to reinsure the very mortgages that the mortgagees originated. The PMI insurers in both this case and in *Cunningham* purchased their reinsurance from the respective mortgagee's "captive" reinsurance subsidiary. ECF No. 149, at 2; 814 F.3d at 159. The plaintiffs in both cases allege this scheme is really a form of collusion (prohibited by RESPA's anti-kickback and anti-fee splitting provisions) between the mortgagee and the PMI insurer, in which the mortgagee is referring its borrowers to specific PMI companies in order to then cash in on reinsurance agreements without taking on any real risk.[4] ECF No. 149, at 3; 814 F.3d at 159.

The record in both cases show that the homeowners were made aware of the captive reinsurance program through disclosures at the time of closing. ECF No. 149, at 2; 2015 WL 539761, at *2. In fact, Plaintiffs here acknowledge that the disclosures in this case are materially the same as the disclosures provided to the plaintiffs in *Cunningham*. Pls.' Resp. in Opp. to Defs.' M. for J. on the Pleadings, ECF No. 250, at 9 n.6. In *Cunningham*, the homeowners did not elect to opt out, did not ask questions of the challenged scheme at or prior to closing, and did not investigate their mortgage until they were solicited by their current counsel. 2015 WL 539761, at *2. The *Cunningham* plaintiffs' counsel sent letters to plaintiffs advising that counsel were investigating claims concerning the captive mortgage reinsurance scheme described above.

---

[3] A mortgage reinsurance company agrees to assume a portion of the risk associated with insuring against mortgage default in exchange for a percentage of the PMI premiums already being paid by the borrower. 814 F.3d at 159.

[4] In the case of default on a mortgage involving primary insurance and reinsurance, the primary insurer must pay the primary insurance claim. The reinsurer would reimburse the primary insurer for a portion of that claim (thereby allowing the primary insurer to lessen its own risk in issuing insurance on defaults). Plaintiffs contend that if "there is no reasonable expectation that the reinsurer will ever have to pay claims" to the primary insurer, there is no actual transfer of risk. *See* SACAC Ex. 22, at 2–5.

3

814 F.3d at 159. In our case, Plaintiffs failed "to pursue their claims until after receiving notice from counsel." ECF No. 250, at 8.

The *Cunningham* plaintiffs also filed a putative class action complaint alleging violations of RESPA, 12 U.S.C. § 2607, and unjust enrichment. The *Cunningham* defendants responded that RESPA's one-year statute of limitations barred the plaintiffs' RESPA claim and they were not entitled to equitable tolling of that limitations period. 814 F.3d at 159. The *Cunningham* district court ordered limited discovery on the issue of equitable tolling, and the defendants moved for summary judgment. *Id.* at 160. The district court concluded that the claims were indeed time barred and that the plaintiffs could not equitably toll the limitations period because none of the plaintiffs had exercised reasonable diligence in investigating any potential RESPA claims within the statute of limitations. 2015 WL 539761, at *6–7. Acknowledging that their claims fall outside of RESPA's one-year statute of limitations, Plaintiffs here too rely on the doctrine of equitable tolling in an effort to save their RESPA claim.

In light of these similarities and the request of the parties, the Court stayed this case pending the final disposition of *Cunningham* at our Court of Appeals. That final disposition arrived on February 19, 2016. The Court of Appeals affirmed the district court's holding in *Cunningham*, noting each plaintiff was on notice through plain language disclosures from the time of closing that reinsurance on their mortgage could be with an affiliate of the mortgagee. 814 F.3d at 158–61. After closing, the plaintiffs took no steps to investigate or question the reinsurance scheme "or take any steps to discover if they had a claim under RESPA." *Id.* at 162. Thus, the plaintiffs failed to show reasonable due diligence, the third element of a fraudulent concealment basis of tolling. *Id.*

The stay in this case was lifted on June 19, 2017.[5] ECF No. 235. Defendants then filed their instant Motion for Judgment on the Pleadings, ECF No. 238.

## II. Standard of Review

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Our Court of Appeals very recently summarized the standard of review for a motion for judgment on the pleadings:

> A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. A motion for judgment on the pleadings should be granted if the movant establishes that there are no material issues of fact, and he is entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party.

*Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017) (internal quotations and citations omitted).

## III. Discussion

### A. Count I: RESPA, 12 U.S.C. § 2607

Our Court of Appeals affirmed the district court's holding in *Cunningham*, agreeing that equitable tolling did not apply to the RESPA claim. 814 F.3d at 158. "Equitable tolling 'can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstance.'" *Id.* at 160 (quoting *Santos ex rel. Beato v. United States,* 559 F.3d 189, 197 (3d Cir. 2009)). The *Cunningham* plaintiffs argued they were actively misled with respect to the nature and existence

---

[5] The stay remained in place for some time after *Cunningham* due to several intervening events not relevant to the Motion here. *See* Mem. Op., ECF No. 231.

5

of their claims. 814 F.3d at 161. In order to invoke this fraudulent concealment basis of tolling, a plaintiff must show "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).

Our Court of Appeals noted each *Cunningham* plaintiff had received a disclosure form that explained reinsurance "in plain language" and provided notice that that the reinsurance could be with an affiliate of the mortgagee. 814 F.3d at 161. After closing, the plaintiffs took no steps to investigate or question the reinsurance scheme "or take any steps to discover if they had a claim under RESPA." *Id.* at 162. The Court of Appeals concluded that the plaintiffs failed to show reasonable due diligence, the necessary third element for such tolling. *Id.* It summarized the events between the closing and the initial contact by counsel as nothing more than inaction, and "inaction was not reasonable diligence." *Id.* Of significance, the Court also rejected the theory that the "lengthy mortgage documents did not give [plaintiffs] any reason to investigate," because the RESPA statute created a limitations period that began to run on the date of the occurrence of the violation. *Id.* at 162. "It is thus irrelevant for purposes of the statute of limitations in RESPA when a reasonable plaintiff would have discovered her claim." *Id.* at 163. Regardless, Plaintiffs cannot simply "ignore the plain words" of the mortgage disclosures, which provided "the facts necessary to allege their claim under RESPA." *Id.*

Plaintiffs here now ask this Court to allow discovery so they may develop their own record to augment their own equitable tolling allegations. After all, they say, *Cunningham* was decided by the district court at the summary judgment phase after limited discovery, not on a judgment on the pleadings motion. Unfortunately for Plaintiffs, there are no answers to be had

6

from discovery because there are no questions to ask. The similarities between this case and *Cunningham* cannot be overstated. The relevant disclosures were materially the same between the two cases. ECF No. 250, at 9 n.6. Just like the plaintiffs in *Cunningham*, Plaintiffs had all the facts at the time of closing to allege their claim under RESPA, but their inaction during the limitations period bars the application of equitable tolling under a theory of fraudulent concealment.

This Court concludes that, in light of *Cunningham*, Plaintiffs have failed to plausibly plead and show reasonable due diligence with respect to their RESPA claim, that for the above reasons they cannot do so, and cannot use equitable tolling to rescue otherwise time-barred claims. As with the plaintiffs in *Cunningham*, Plaintiffs in this case "had all the facts necessary to develop their claims under RESPA. Yet they failed to take any steps to investigate during the . . . period between the time of the closing and the time that they were approached by counsel. This inaction was not reasonable diligence." *Id.* at 162. Just like the situation in *Cunningham*, Plaintiffs were put on notice at the time of their respective loan closings that their private PMI provider may obtain reinsurance from an affiliate of the lender, and they failed to investigate their alleged RESPA claim within the one-year statute of limitations. 12 U.S.C. § 2614. Without a plausible showing of due diligence, Plaintiffs cannot establish an equitable tolling defense. *Cetel*, 460 F.3d at 509. It is thus plain on the record that the limitations period cannot be tolled here.

Because the Court can and does reach this conclusion based on the pleadings and record as they stand, and Plaintiffs' proposed discovery would be futile. Therefore, this claim is barred by the statute of limitations and cannot be saved by equitable tolling. Judgment will be entered in favor of all Defendants on Count I of the SACAC.

## B. Count II: Unjust Enrichment

Plaintiffs' theory as to unjust enrichment is as follows: Plaintiffs conferred a substantial benefit upon the Defendants when they paid their PMI premiums to the PMI insurer because a portion of each PMI premium payment was funneled (or "kicked back") to the mortgagee's captive reinsurer entity as a type of referral fee. SACAC, ¶¶ 210, 216, 221–22. In exchange for these payments, the reinsurance entities agreed to provide reinsurance. *Id.* ¶ 210. In reality, says the Plaintiffs, they were not actually assuming any risk by offering that reinsurance. *Id.* ¶¶ 72–73. Boiled down, the Plaintiffs allege that, by paying their PMI premiums, they were conferring a benefit upon the Defendants, but the Defendants were offering nothing in return. Plaintiffs seek restitution of Defendants' enrichment, "ill-gotten gains," and "profits realized by Defendants as a result of their unfair, unlawful and/or deceptive practices." *Id.* ¶¶ 223, 224.

In order to reach the merits of this claim, the Court must first address subject matter jurisdiction in light of the dismissal of the RESPA claim. As discussed below, the Court concludes the SACAC does not establish subject matter jurisdiction. While Plaintiffs may be able to show subject matter jurisdiction in an amended complaint, such amendment would be futile because the unjust enrichment claim is barred by the statute of limitations and the "filed rate" doctrine.

### i. *Threshold issue of jurisdiction*

This Court had subject matter jurisdiction over this action pursuant to federal question jurisdiction (RESPA claim) and supplemental jurisdiction (unjust enrichment claim). 28 U.S.C. §§ 1331 & 1367; *see* SACAC, ¶ 35. The Court declines to exercise supplemental jurisdiction over this sole remaining common law claim. *See* 28 U.S.C. § 1367(c); *Simcic v. Pittsburgh Water & Sewer Auth.*, 605 F. App'x 88, 92 (3d Cir. 2015) (prior to trial, district court must

8

decline to exercise supplemental jurisdiction over pendent state claim once it dismisses the claim over which it had original jurisdiction absent extraordinary circumstances).

But Plaintiffs also contend that this Court's jurisdiction over the claim is still viable pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). But even with that, Defendants argue that even if this were true, Plaintiffs would have to amend their pleading to properly plead the requisite diversity facts. Plaintiffs have alleged that all the facts pertaining to Plaintiffs' domicile are in the SACAC because it describes in detail the locations of the Plaintiffs' primary homes that are tied to the mortgages at issue in this case. But the SACAC does not assert the linchpin fact that Plaintiffs were citizens of the state in which their home is/was located *at the time the Complaint was filed.* Jurisdiction is measured on facts as they were at the time a complaint is filed and not the earlier time each Plaintiff bought their homes or obtained a mortgage. *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 582 (2004). The SACAC, on its face, is insufficient to establish jurisdiction under § 1332(d).

    *ii.    Statute of Limitations*

Even if Plaintiffs amended their pleadings to show subject matter jurisdiction, the claim still cannot survive. Plaintiffs allegedly hail from a number of states: Georgia, North Carolina, Illinois, New York, Maryland, and Pennsylvania. Plaintiffs' counsel admitted at oral argument on this Motion that the state law unjust enrichment claims are barred by the statute of limitations in every pled state except for New York. In fact, this Court dismissed the unjust enrichment claim in the First Amended Class Action Complaint, ECF No. 64, without prejudice because "only the unjust enrichment claims of two are potentially timely, and there is no indication that

extraordinary circumstances exist that would otherwise warrant the Court's retaining jurisdiction over them." ECF No. 124, at 24.[6]

Plaintiffs claim there may be tolling available to those Plaintiffs with untimely unjust enrichment claims for all the reasons that their RESPA claim is entitled to tolling. None of those reasons panned out for their RESPA claim, and those reasons cannot save the time-barred unjust enrichment claims.[7] *See White v. PNC Fin. Servs. Grp., Inc.*, No. 11-cv-7928, 2014 WL 4063344, at *9 (E.D. Pa. Aug. 18, 2014) (analysis of equitable tolling for RESPA claims also applies to equitable tolling of unjust enrichment claims at motion to dismiss stage); *Barlee v. First Horizon Nat'l Corp.*, No. 12-cv-3045, 2013 WL 706091, at *6 (E.D. Pa. Feb. 27, 2013) (same); *see also McCarn v. HSBC USA, Inc.*, No. 12-cv-00375, 2012 WL 5499433, at *9 (E.D. Cal. Nov. 13, 2012) (unsuccessful tolling arguments for RESPA claim also fail to toll California unjust enrichment claim). Thus, unjust enrichment claims as to all the Plaintiffs except those from New York are barred by the statute of limitations.

---

[6] Following the Court's Order granting dismissal without prejudice of the First Amended Class Action Complaint, Plaintiffs filed the operative SACAC. Defendants filed Motions to Dismiss. ECF Nos. 133, 135. With respect to the unjust enrichment claim, Defendants challenged whether the SACAC adequately stated a claim on the basis that a contract (here, the mortgage document and accompanying disclosure) was directly on point. This Court rejected that argument, concluding, "Plaintiffs have sufficiently pled that there was no contract between themselves and the parties to the purported kickback scheme." ECF No. 149, at 9. The Court did not address the timeliness of this claim in that Opinion nor the application of equitable tolling. Therefore, Plaintiffs are incorrect in their assertion that "as this Court has previously held, Plaintiffs have adequately alleged that their unjust enrichment claims are timely and are entitled to discovery supporting such contention." ECF No. 250, at 24.

[7] Plaintiffs claimed at Oral Argument that there could possibly be other unidentified individuals with timely unjust enrichment claims besides the New York individuals. This case is in its seventh year—it should not now be used as a space saver in federal court for potential unknown plaintiffs in unknown states to now come forward and litigate their state common law claims.

### iii. *Filed Rate Doctrine*

The filed rate doctrine provides that a rate, such as that for PMI, filed with and approved by a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers. *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *Walton v. N.Y. State Dep't of Corr. Servs.*, 921 N.E.2d 145, 158 (N.Y. 2009) (Read, J., concurring) (consumer "may not collaterally attack the rate in any other type of lawsuit to invalidate or modify it, or seek damages based on the difference between the filed rate and some other rate thought by the customer to be more reasonable").

PMI insurers are required to file their rates with state agencies for approval.[8] Defendants argue that even if Plaintiffs are able to show § 1332(d) subject matter jurisdiction, the filed rate doctrine under New York law bars the potentially remaining unjust enrichment claim. Plaintiffs rely on Third Circuit law to argue that the unjust enrichment claim here only challenges wrongful conduct, not the rate itself, and conduct-based claims (which is how they would characterize their claim) do not offend the filed rate doctrine. *See Alston*, 585 F.3d at 765 (concluding the fired rate doctrine does not apply to RESPA claims).

The unjust enrichment claim is a state law claim, and respective states apply the filed rate doctrine differently. *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, 2013 WL 139913, at *12 (S.D. Fla. Jan. 10, 2013) (contrasting state formulations of the filed rate doctrine). Contrary to Plaintiffs' argument to apply Third Circuit decisional law as to the intersection of the filed rate doctrine and RESPA, the Court must apply state law when deciding whether the filed rate doctrine applies to this state common law claim. *See Wayne Moving & Storage of N.J. v. Sch. Dist. of Phila.*, 625 F.3d 148, 150 (3d Cir. 2010) (diversity action for unjust enrichment

---

[8] *See e.g.*, N.Y. Ins. Law § 6504(a) (McKinney 2017); 40 Pa. Cons. Stat. § 710-5(a) (2017).

11

claim requires court to apply state law). It is plain that New York substantive law applies.[9] *See also Kunzelmann*, 2013 WL 139913, at *37–38 ("To determine whether, and to what extent the filed-rate doctrine is applicable would require an analysis of each state's formulation of the doctrine.").

New York takes a firm position on the application of the filed rate doctrine to Plaintiffs' unjust enrichment claim. "It has repeatedly been held that a consumer's claim, however disguised, seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission, is viewed as an attack upon the rate approved by the regulatory commission. All such claims are barred by the 'filed rate doctrine.'" *Porr v. NYNEX Corp.*, 660 N.Y.S.2d 440, 442 (N.Y. App. Div. 1997); *see Walton*, 921 N.E.2d at 158 (citing to the rule as stated in *Porr*).[10] That is exactly what we have here: Plaintiffs are seeking relief for an injury allegedly caused by the payment of PMI premiums, a rate that was filed with a regulatory commission.

---

[9] The only remaining Plaintiffs (assuming subject matter jurisdiction is established) are citizens of New York. The record without contradiction indicates that their relevant mortgages attached to New York residential properties, and the mortgage documents were presumably executed in New York because the New York Plaintiffs' mortgage documents were notarized by a New York Notary Public. ECF No. 126-3, at 11.

[10] While the majority opinion in *Walton* did not reach the issue of the filed rate doctrine (dismissing the claims on other grounds), the concurring opinion concluded that the doctrine would have also barred the claims from going forward. The alleged scheme in that case is very similar to our pled scheme here, albeit in a different context. In *Walton*, the Department of Correctional Services contracted with a telecommunications company to provide phone service in prisons. The rate for inmates to make collect calls was approved by a state agency, but the telecommunications company was taking a portion of that filed rate and funneling it back to the Department of Correctional Services as a form of commission. Plaintiffs objected to that portion of their approved rate from being funneled by the Department. In his concurrence, Judge Read concluded that the filed rate doctrine barred attacks on the paid rate. 921 N.E.2d 145.

Thus, even if Plaintiffs were granted leave to amend Count II to show jurisdiction under § 1332(d), the record reveals that the statute of limitations bars all claims except the New York Plaintiffs' claims, and the filed rate doctrine bars the New York claims.

Thus, judgment will be entered in favor of Defendants on Count II.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, ECF No. 238, will be GRANTED. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: January 19, 2018

cc: All counsel of record